UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

—————————————————————————————
|
LINDA GLASS,                              |     Case No. 1:08-cv-302
|
Plaintiff,                      |     HONORABLE PAUL MALONEY
|
v.                              |
|
THE KELLOGG COMPANY BAKERY,               |
CONFECTIONERY, TOBACCO WORKERS and        |
GRAIN MILLERS PENSION PLAN,               |
|
Defendant.                      |
|
—————————————————————————————

*Amended (\*see page 27)*
**Opinion and Order**
*" Glass 4 "*

**Granting the Defendant's Motion to Dismiss Count 2 (Claim for Equitable Relief)**


Plaintiff Linda Glass ("Glass") commenced this action under the Employment Retirement

Income Security Act, 29 U.S.C. § 1131 *et seq.* ("ERISA"), in April 2008.  *See* 1st Amended

Complaint filed July 28, 2008 ("Am Comp") ¶ 1.  By order of the Magistrate Judge entering a joint

stipulation, Glass amended the complaint in July 2008, and this court denied as moot the motion to

dismiss the original complaint.  *See Glass v. The Kellogg Co. Bakery Workers Pension Plan*, 252

F.R.D. 367 (W.D. Mich. 2008) (Maloney, J.) ("*Glass I*").[1]  Glass alleges that defendant, The Kellogg

Company Bakery, Confectionery, Tobacco Workers & Grain Millers Pension Plan ("the Plan")

—————————————————————————
[1]
        On August 11, 2008, the Plan filed an answer to the amended complaint which asserted
objection to Glass's demand for trial by jury, and Glass filed a notice withdrawing her jury demand.

-1-

violated ERISA by reducing her monthly pension payments and indicating its intention to further reduce them. Count one seeks benefits pursuant to 29 U.S.C. § 1132(a)(1)(B) (count 1), *see* Am Comp ¶¶ 8-10, and count 2 seeks equitable estoppel at common law, *id.* ¶¶ 11-21.

In August 2008, the Plan[2] moved to dismiss pursuant to FED. R. CIV. P. 12(b)(6) for failure to state a claim, contending that Glass failed to exhaust administrative remedies and the Plan cannot be equitably estopped from invoking that failure as a basis for dismissal. Glass filed no opposition brief, thereby failing to carry her burden of proving exhaustion, so the court dismissed the complaint without prejudice in October 2008. *See Glass v. The Kellogg Co. Bakery Workers Pension Plan*, 2008 WL 4534422, *2 (W.D. Mich. Oct. 6, 2008) (Maloney, C.J.) ("*Glass 2*").

Glass timely filed a motion for reconsideration, the Plan filed an opposition brief, and Glass filed a reply brief. In May 2009 the court granted Glass's motion, vacated the dismissal of her complaint, and reinstated the case to the active docket. *See Glass v. The Kellogg Co. Bakery Workers Pension Plan*, 2009 WL -------- (W.D. Mich. May __, 2009) (Maloney, J.) ("*Glass 3*").

**Finally, in July 2009 the Plan moved to dismiss count two, entitled "ERISA - Equitable Estoppel", contending that equitable claims are not permitted in matters involving the payment of benefits under ERISA pension plans, and Glass timely filed an opposition brief on Friday, August 7. For the reasons that follow, the court will grant the Plan's motion without waiting to see whether the plan files a reply brief.**[3] Glass contends that count two seeks merely

---

[2]

The Plan's Pension Committee has six members – three appointed by Kellogg and three appointed by the General Executive Board of the union – and the plan gives them discretionary authority regarding the administration, interpretation, and enforcement of its terms. *See* MTD Ex A (Plan) §§ 7.1 and 7.7(a).

[3]

Under this court's local civil rules, after the Plan was electronically served with Glass's

to enforce the plan, not to obtain benefits greater than she is entitled to under its terms; if so, count two is duplicative of count one (the straight legal claim for benefits) and should be dismissed on that ground. Conversely, to the extent that count two seeks benefits higher than those to which the terms of the plan entitle Glass – by estopping the Plan from asserting its right to pay only what the plan requires, rather than the higher amount it had been paying her – it is an equitable claim of the type barred by our Circuit's precedent.

## BACKGROUND

Glass began working for the Kellogg Company on August 8, 1972, and the company provided a pension pursuant to the terms of a written agreement, the Plan. *See* Am Comp ¶ 5 and Ex 1. Glass left the employ of the company in late 2004 or early 2005, and the Plan initially credited her with 32.08 years of service – August 8, 1972 through September 16, 2004 – for purposes of calculating her pension benefit, yielding a monthly pension payment of $851.08. *See* Am Comp ¶ 5. Glass received that amount from February 1, 2005 through July 1, 2007, when, she alleges, the plan unilaterally reduced her monthly gross pension payment from $851.78 to $ 796.01, Am Comp

---

opposition brief, it has 14 days to file a reply. *See* W.D. MICH. LCIVR 7.2(a) (motion to dismiss is a dispositive motion); W.D. MICH. LCIVR 7.2(c) (on a dispositive motion, movant has 14 days to file a reply). FED. R. CIV. P. 6(a)(1) provides that "in computing any time period specified in these rules or in any local rule, court order or statute", the court must "exclude the day of the act, event, or default that begins the period." Accordingly, the Plan's 14 days began the day after Glass e-filed her opposition, i.e., on Saturday, August 8, 2009. Because the period of time is longer than 10 days, the court counts weekends and holidays, per FED. R. CIV. P. 6(a)(2). Thus, the Plan's 14-day reply period lasts until midnight on Saturday, August 22. When a deadline falls on a weekend or federal holiday, the deadline is moved to the next court business day, which will be Monday, August 25.

Nonetheless, the Plan cannot be prejudiced by the court ruling on its motion without waiting for its reply brief, because the court is granting that motion and dismissing count two as requested.

¶¶ 5-7, apparently based on its calculation that she actually had only 30.0 years of creditable service.

By letter dated June 28, 2007, the Plan announced its intention to further reduce Glass's monthly pension payment by $79.60 for the period from August 1, 2007 through May 1, 2009. *See* Am Comp ¶ 7. The Plan stated that the forthcoming reduction was intended to recoup alleged overpayments plus compound interest at the rate of 4.85% per annum. *See* Am Comp ¶ 7.


**PROCEDURAL HISTORY:**
**Prior Rulings on Exhaustion of Administrative Remedies**

The parties agreed that the Plan is an "employee pension benefit plan" as that term is defined by 29 U.S.C. § 1002(2)(A) and a "qualified defined benefit plan" under 26 U.S.C. § 401, and that Glass is a participant eligible to receive pension benefits from the Plan due to her employment with the Kellogg company in Battle Creek, Michigan, *see* Am Comp ¶¶ 3-4 and Motion to Dismiss the First Amended Complaint "(MTD"), Ex A § 1.2, and the court so found. *See Glass II*, 2008 WL 4534422 at *3. The court then determined that section 7.9 of the Plan requires participants to exhaust administrative remedies before filing a lawsuit, and the required administrative remedies include internal appeal of an adverse determination. *See Glass II*, 2008 WL 4534422 at *3 (citing MTD Am Comp, Ex A § 7.9). Neither party has asked the court to depart from those determinations, which are the law of the case. *See Griffin v. Reznick*, – F. Supp.2d –, –, 2008 WL 510528, *7 (W.D. Mich. Dec. 2, 2008) (Maloney, C.J.) (discussing contours of law-of-the-case doctrine) (citing, *inter alia*, *Williams v. McLemore*, 247 F. App'x 1, 4 (6th Cir. 2007) (Griffin, J.)).

The court noted that although ERISA is silent as to whether exhaustion of administrative remedies is prerequisite to bringing a civil action, our Circuit holds that it is required. *Glass II*, 2008 WL 4534422 at *3 (quoting *Coomer*, 370 F.3d at 504) (citations & n.2 omitted). The court stressed

the importance of enforcing the exhaustion requirement, which "enables plan fiduciaries to efficiently manage their funds, correct their errors, interpret plan provisions, and assemble a factual record which will assist a court in reviewing the fiduciaries' actions." *Id.*

The court was mindful that the exhaustion requirement does not apply where the claimant shows that resort to the administrative appeal process "'would be an exercise in futility.'" *Glass II*, 2008 WL 4534422 at *4 (quoting *West*, 484 F.3d at 402). But because Glass made no attempt to oppose the motion and actually show that resort to the internal appeal process would have been futile, or was otherwise excused, the court concluded she had not carried her burden of providing "'a *clear and positive* indication of futility'", i.e., a showing that "'it is *certain* that h[er] claim will be denied on appeal, not merely that [s]he doubts that an appeal would result in a different decision.'" *Glass II*, 2008 WL 4534422 at *4 (citing *Hill*, 409 F.3d at 719). The court also noted that because Glass did not file a brief, she failed to raise any argument that the plan waived its right to invoke the exhaustion requirement. *Glass II*, 2008 WL 4534422 at *4. Accordingly, the court concluded, based on the one-sided presentation before it, that Glass was not entitled to sue the Plan until she exhausted her administrative remedies, including an appeal to the Plan's Appeal Board.

**However, once Glass filed a reconsideration motion providing the requisite reasoned argument and citations to the record and to authority in support of her contention that exhaustion would have been futile, the court granted reconsideration. *Glass 3*, 2008 WL 4534422 at *5.** It was true that Glass could and should have made and supported this argument by filing a brief in opposition to the Plan's motion to dismiss the amended complaint. And it was unavailing for Glass to complain that she addressed the notice issue in her brief opposing the motion to dismiss the original complaint. It was not the court's job to scour past filings to compensate for

counsel's failure to file a timely brief which properly placed the pertinent issues before the court. Moreover, the court had discretion to deny reconsideration on the strength of the principle that a reconsideration motion should not be "used to raise arguments which could, and should, have been made before judgment issued." *Glass 3*, 2009 WL _____ at *___(citing *Sault Ste. Marie Tribe v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998) ("*Soo*")).

But the court concluded that manifest injustice would result if the court ignored the late but undeniably *meritorious* argument she presented. Seven years before the *Soo* decision on which the Plan relied, our Circuit issued *Carver v. Bunch*, 946 F.2d 451 (6th Cir. 1991). *Carver* held that a district court cannot simply grant a Rule 12(b)(6) motion merely because it is unopposed, but should analyze whether the complaint states a claim, notwithstanding plaintiff's dereliction in failing to oppose the motion. *See Glass 3*, 2009 WL ____ at *___ (quoting *Carver*, 946 F.2d at 452 and 454).

This court concluded that to the extent that *Soo* (6th Cir. 1998) conflicted with *Carver* (6th Cir. 1991) on this score, the later decision yielded to the earlier decision because both were published decisions. *See Glass 3*, 2009 WL _____ at *___ (citing *US v. Tate*, 516 F.3d 459, 467 (6th Cir. 2008)). The court followed *Carver* and allowed Glass to raise on reconsideration the arguments that she should have raised in an opposition brief. *Glass 3*, 2009 WL _____ at *___.

Glass's opening reconsideration brief emphasized that the Plan did not notify her sufficiently of the reason for the reduction in benefits, merely asserting, without more, that there was an overpayment based on years of credited service, and it *never* advised that she had a right to contest and appeal the proposed reduction, let alone explain to her how she would go about pursuing those remedies. *See Glass 3*, , 2009 WL _____ at *___ (citing P Recon. at 5 (citing Am Comp ¶ 9)).

The plan's brief in opposition to reconsideration did not rebut Glass's contention – clearly

correct – that the Plan's failure in this regard violated 29 U.S.C. § 1133(1) (requiring plan to "provide *adequate notice* in writing . . . setting forth the *specific* reasons for the denial, written in a manner calculated to be understood by the participant") and 29 C.F.R. § 2560.503(g)(1)(I) and (ii) ("specific reasons for the adverse determination" and "reference to the specific plan provisions on which the determination is based"); and violated 29 C.F.R. § 2560.503(g)(1)(iv) by failing to provide a "description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review." *Glass 3*, , 2009 WL _____ at *___.

The Plan's opposition also made no attempt to rebut Glass's contention, again correct, that the main Plan document itself promised that

> [i]f the Committee determines that any Participant or Vested Pensioner . . . is not entitled to receive all or any part of the Pension claimed, it will inform the claimant by certified mail of its determinations and the reasons therefor *with specific reference to pertinent Plan provisions*, specific reference to additional information, if any, necessary to perfect the claim, *a description of the review procedures set forth below, and the time period in which the appeal must be filed. The notice shall also contain a description of the Plan's review procedures . . . informing the Participant . . . that the Participant . . . can seek additional information about potential alternative dispute resolution methods available under the Plan.*

*Glass 3*, , 2009 WL _____ at *___ (quoting P's Recon. Mot. at 6-7 (quoting MTD Am Comp, Ex A § 7.9 (emphasis added) and citing *VanderKlok v. Provident Life & Acc. Ins. Co.*, 952 F.2d 610, 616 (6th Cir. 1991))). This court determined that such a combination of violations by omission precludes a finding that the Plan's June 28, 2007 letter constituted substantial compliance with the Act and accompanying regulations. *See Glass 3*, 2009 WL _____ at *___[4]

---

[4]
This ruling is now the law of the case. "The law of the case doctrine provides that 'when a

The court declined to decide whether the Plan's failure to provide the statutorily and contractually required notice warranted an order directing them to pay Glass's original benefits retroactively. *See Glass 3*, 2009 WL _____ at *___. Glass has not yet presented such an argument to the court in a dispositive motion.

## DISCUSSION

In count two, entitled ERISA - Equitable Estoppel, Glass alleges and claims as follows:

13. At all relevant times Defendant owed a fiduciary duty not to misinform Plan participants, whether its statements were made negligently or intentionally.

14. In 2004, in an attempt to make adequately informed decisions regarding pension benefits to which she might be entitled, Plaintiff inquired of Defendant as to her amount of credited service and her anticipated monthly pension benefit.

15. Defendant, through its agents and employees, in a written "Pension Benefit Calculation", represented to plaintiff that her monthly pension benefit would be based upon her 32.08 years of credited service, entitling her to the monthly sum of $891.05. (Exhibit 1 - Benefit Calculation).

16. There was a likelihood [that] Defendant's representations to Plaintiff would

---

court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *Williams v. McLemore*, 247 F. App'x 1, 4 (6th Cir. 2007) (Griffin, J.) (quoting *AZ v. CA*, 460 U.S. 605, 618 (1983)).

The law-of-the-case doctrine is not a completely inflexible command, *Griffin v. Reznick*, – F. Supp.2d – , 2008 WL 5110528, *8 (W.D. Mich. 2008) (Maloney, C.J.) (citing, *inter alia*, *AZ v. CA*, 460 U.S. at 618, and *Lambert v. Blackwell*, 387 F.3d 210, 236 n.20 (3d Cir. 2004)). "But the court's discretion to 'reach a result inconsistent with a prior decision reached in the same case is to be exercised very sparingly, and only under extraordinary conditions.'" *Watt v. US*, 162 F. App'x 486, 501 (6th Cir. 2006) (Griffin, J.) (quoting *Gragg v. Somerset Tech. Coll.*, 373 F.3d 363, 367 (6th Cir. 2004)). One such "extraordinary condition" is the issuance of new binding authority – i.e., a decision of the U.S. Supreme Court or a published decision of our Circuit – which undermines the rationale that led to the legal or factual determination in question. *See US v. Ealy*, 2009 WL 1766726, *2 (W.D. Mich. May 20, 2009) (Maloney, C.J.).

mislead a reasonable employee and, in fact, did mislead the Plaintiff.

17. In justifiable reliance upon Defendant's representations, Plaintiff made application for pension benefits under the Plan, and from February 1, 2005 to July 1, 2005, Defendant Plan made monthly pension payments to Plaintiff of $851.58.

18. In June 28, 2007 correspondence, Defendant advised plaintiff that it had misinformed her in 2004 regarding her years of credited service and about the monthly pension benefit to which she was entitled. (Exhibit 2 - June 28, 2007 correspondence)

19. Defendant Plan unilaterally reduced Plaintiff's gross plan payment, effective August 1, 2007, from $851.58 to $796.01, and in addition, further reduced plaintiff's monthly gross payment by $79.60 (for the period fo 8/1/07 through 5/1/09).

20. The action of the plan was taken without any advanced [sic] notice and without any notification to the Plaintiff of as right to contest or appeal the determination. Further no reason was given as to why such action was being taken other than there was an overpayment based on years of credited service which the plan claimed was to be corrected to 30 years.

21. Equity requires that Defendant be estopped from reducing Plaintiff's monthly benefit.

.

Am Comp ¶¶ 13-21. Glass invokes ERISA section 502(a)(3), entitled Persons Empowered to Bring

a Civil Action, which provides,

A civil action may be brought –

* * *

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates this provision of this subchapter or the terms of the plan, or (B) *to obtain other appropriate equitable relief* (ii) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

Plaintiff's Brief in Opposition to Motion to Dismiss Count Two, filed August 7, 2009 ("P's Opp")

at 6 (emphasis added by Glass). Glass contends that

502(a)(3) clearly empowers Plaintiff Linda Glass to bring a civil action to "obtain appropriate equitable relief." She has done so, invoking this Court's equitable powers to enjoin Defendant from "any further reductions in Plaintiff's monthly

benefit in its attempt to recoup alleged overpayment". (Complaint, Page 4). Nowhere does plaintiff seek a lump sum award or any form of compensatory or punitive damages from Defendant. Clearly, the appropriate remedy to [sic] Plaintiff's problem is equitable.

* * *

This case presents a situation where ERISA's equitable relief is most appropriate: where a fiduciary has reduced Plaintiff's benefits and collected alleged "overpaid" benefits from Plaintiff without providing the reason and without offering any right to challenge or appeal that decision. (See Par. 9 of Amended Complaint) Plaintiff had been receiving pension benefits based upon her 32.08 years of credited service at the time of Defendant's adverse benefit determination, and it will take the equitable authority of this Court to re-instate her benefit rate and reimburse her for the benefits that have been wrongly denied.

Defendant has relied on various 6th Circuit decisions holding that estoppel cannot be used "to override the clear terms of the plan document", and that to do so "would be to enforce something other than the Plan documents themselves." *Easa v. Florist's Association*, 5 F. Supp.2d 522, at 527 [sic]. Such a situation is completely distinguishable from the claim alleged by Plaintiff, herein. Linda Glass's amended complaint does not attempt to override the terms of the Kellogg Plan document or to enforce something other than the Plan itself. It seeks to estop Defendant from reducing her monthly pension payment where Defendant has done so without giving her any explanation of the reason or providing a right to administratively challenge the decision. (Par. 9 of Amended Complaint)

* * *

Plaintiff[']s Amended Complaint states a valid claim of equitable estoppel pursuant to 29 U.S.C. § 502(a)(3).

P's Opp at 7-9.

Both Glass and the Plan completely ignore a host of Sixth Circuit decisions which squarely address and reject her argument, as well as an opinion by this court which discussed the issue thoroughly in a similar context and adhered to published decisions from our Court of Appeals. *See MEEP Fund v. Encompass Elec. & Data, Inc.*, – F. Supp.2d –, – (W.D. Mich. 2008) (applying *Central States S.E. and S.W. Areas Pension Fund v. Behnke, Inc.*, 883 F.2d 454 (6th Cir. 1989) and *Bakery & Confectionery Union & Indus. Int'l Health Benefits & Pension Funds v. New Bakery of Ohio*, 133 F.3d 955, 959 (6th Cir. 1998)). Their argument centers almost entirely on the import of

*Varity Corp. v. Howe*, 516 U.S. 49 (1996); as discussed below, that decision is of no avail to Glass.


Oral Modification of a Written Non-ERISA Contract under Michigan Law

Michigan law holds that a written contract may be modified orally or in writing. *See Modern Living, LLC v. Wheatley*, 2007 WL 3170523, *2 (Mich. App. Oct. 30, 2007) (citing *Chatham Supermarkets, Inc. v. Ajax Asphalt Paving, Inc.*, 121 N.W.2d 836 (Mich. 1963)). The modification must be by mutual consent. *See Modern Living*, 2007 WL 3170253 at *2 (citing *Adell Broadcasting Corp. v. Apex Media Sales, Inc.*, 708 N.W.2d 778 (Mich. App. 2005)). "'The mutuality requirement is satisfied where a modification is established through clear and convincing evidence of a written agreement, oral agreement, or affirmative conduct establishing mutual agreement to waive the terms of the original contract.'" *Modern Living*, 2007 WL 3170523 at *3 (quoting *Quality Prods. & Concepts Co. v. Nagel Precision, Inc.*, 666 N.W.2d 251, 258 (Mich. 2003)).


Oral Modification of a Written Contract (Plan) Governing ERISA Benefits is Prohibited

However, this court is not free to apply Michigan common law, because the Sixth Circuit has held that LMRA and ERISA must be read to prohibit oral modification of a written agreement that expressly specifies the extent of an employer's obligation to make benefit contributions.

In *Central States S.E. and S.W. Areas Pension Fund v. Behnke, Inc.* ("*Behnke*"), 883 F.2d 454 (6th Cir. 1989), a trucking firm named Behnke, Inc. ("Behnke") was party to a series of written CBA negotiated between employers and local unions affiliated with the International Brotherhood of Teamsters ("the union"). *Id.* at 456. From 1950 to 1982, Behnke contributed to numerous employee-benefit funds as required by the CBAs. On March 31, 1982, the then-existing CBA

expired and negotiations commenced for a new one. Meanwhile Behnke and the union executed a written Fringe Benefit Interim Agreement. Under the written agreement, Behnke was obligated to make certain contributions from April 1, 1982 through April 1, 1985 or the date that the new full CBA was executed (whichever was earlier). *Id.* at 456-57. Negotiations over a new full CBA dragged on, and Behnke expressed concern about the rising cost of health-care benefits. *Id.* at 457.

In late 1982, Behnke and the union orally agreed on a new CBA, which was never reduced to writing. This 1982 oral CBA specified how much more Behnke would pay in 1983-84 and 1984-85 for healthcare insurance premiums and for wages. *See Behnke*, 883 F.2d at 457.

In June 1983, Behnke and the union executed a *written* Participation Agreement that specified Behnke's 1982-83 and 1983-84 healthcare-insurance contribution rates. The PA provided that for 1984-85, Behnke's rate would be "whatever rate was necessary to maintain the plan." *Behnke*, 883 F.2d at 457. The PA also bound Behnke to the Central States Trust Agreement, which obligated Behnke to contribute at the rates specified in the applicable CBA while negotiations continued towards a new CBA. *Id.* Accordingly, Behnke contributed to the union's trust fund, and the union paid benefits to Behnke out of that fund through April 1984. *Id.*

In April 1984, Behnke contacted the union regarding healthcare benefits for 1984-85. A union representative incorrectly told Behnke that he would be required to pay an amount that was higher than that called for by the oral CBA. Without the union's consent, Behnke switched to a healthcare insurance carrier which offered lower premiums than the carrier that Behnke had been using (and which the union preferred to continue using). *Behnke*, 883 F.2d at 457. In May 1984, Behnke notified the union that he was discontinuing contributions to its trust fund because its medical carrier's premiums were too high; the union responded by suspending benefits and

payments to Behnke's employees out of that fund.  *Id.* at 457-48.  (Behnke proceeded to maintain

a comparable health and welfare benefits policy by directly paying the carrier that he preferred.  *Id.*

at 458.)

The union sued Behnke under ERISA and LMRA to recover delinquent employee pension,

healthcare, and welfare contributions for April 1984 through November 1985, and the district court

entered judgment for the union.  *Behnke*, 883 F.2d at 458.  The Sixth Circuit affirmed, holding:

> Behnke's claims hinge on the effect, under ERISA, of the 1982-85 oral CBA
> between Behnke and the Union because the terms of the employee benefit plan under
> the oral CBA conflict with the explicit written terms of the plan under the Interim,
> Participation, and Trust Agreements.  That is, the oral CBA gave Behnke the option
> to change carriers in years two and three, while the written agreements commit
> Behnke to continu[ing] its contributions to Central States during, and potentially
> beyond, those years.
>
> The district court concluded that the written agreements determined the duration of
> Behnke's obligation to contribute to Central States and that, to the extent that the oral
> CBA limited that obligation, the oral CBA violated national policy and was legally
> unenforceable.
>
>                                     * * *
>
> The problem with Behnke's reliance on the oral CBA regarding its obligation to
> make contributions to Central States, however, is that the LMRA and ERISA require
> employer contributions to trust funds on behalf of employees to be pursuant to
> detailed *written* agreements specifying the employer's duty to contribute.  *See
> McHugh v. Teamsters Pension Trust Fund*, 638 F. Supp. 1036 (E.D. Pa. 1986) (Fund
> trustees not bound by alleged oral understandings between union and management;
> employee benefit plan agreements, by law, must be written[,] and oral modifications
> or supplementations are invalid) (citing ERISA, 29 U.S.C. § 1102(a)(1), and LMRA
> 29 U.S.C. § 186(c)(5)(B)); *Straub v. Western Union Tel. Co.*, 851 F.2d 1262 (10th
> Cir. 1988) (ERISA precludes oral modification).
>
> Accordingly, but for the other written agreements between Behnke and the Union,
> the provisions of the oral CBA providing for payments to Central States in year one
> and again, following negotiations with employees, in year two while reserving the
> right to negotiate the logistics and carrier for future (third-year) health and welfare
> payments, would be unenforceable as written and in violation of the LMRA and
> ERISA.

*Behnke*, 883 F.2d at 458, 459-60 (one ¶ break added).  *See, e.g., Bd. of Trustees of Ohio Carpenters*

*Pension Fund v. Kovco Carpentry*, 2006 WL 3742266, *2-3 (N.D. Ohio Dec. 15, 2006) (employer Kovco argued "that it does not *now* owe those amounts because a union representative allegedly made some sort of oral agreement with Kovco, an agreement which did not comport with the express terms of the CBA. * * * Of course, no union representative would have the authority to modify the terms of the CBA.") (citing *Behnke*, 883 F.2d at 459).

The rule prohibiting reliance on or enforcement of oral agreements that vary the benefit provisions of a written CBA can also work against an employee. For example, in *Robbins v. IBT*, 2006 WL 1752388 (W.D. Mich. June 23, 2006) (Wendell Miles, Sr. J.), a union local permitted Robbins to be an active, dues-paying member, and the employer agreed to make pension contributions to the plaintiff Fund on his behalf. *Id.* at *3. Both the employer and the union local told Robbins that he was entitled to participate in the pension plan by virtue of his membership in the local. *Id.* at *4. The Trustees of the pension fund, however, ultimately determined that during the period August 1993 through July 1998, Robbins was primarily employed as a mechanic, not a driver, and so was not eligible for pension fund participation under the express terms of the CBA. *See Robbins*, 2006 WL 1752388 at *2. When Robbins died, the amounts paid to his wife did not reflect the pension-fund contributions that the employer had made on his account during the contested five-year period, and Robbins' wife sued the pension fund under ERISA to recover the additional pension amount. *Id.* at *1-2. Judge Miles of this court upheld the pension fund's determination.

Following *Behnke*, as well as persuasive authorities from other circuits, Judge Miles cogently explained why Robbins' wife could not compel the payment of the additional pension benefits *even if both the fund and her late husband's employer wished her to receive them*. Judge Miles wrote:

Section 515 of ERISA provides,

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement *shall*, to the extent not inconsistent with law, *make such contributions in accordance with the terms and conditions of such plan or such agreement.*

29 U.S.C. § 1145 (emphasis added). Section 515 binds the parties to a collective bargaining agreement to the terms of the agreement regardless of their undisclosed intent or understandings. . . . *Behnke* 883 F.2d [at] 463 (where plan had never been apprised of agreement between employer and the union, it was entitled to assume that employer was following the stated terms of the written plan); *Bakery & Confectionery Union v. New World Pasta*, 309 F. Supp.2d 716, 723-24 (D. Md. 2004) (citing *Bakery & Confectionery Union v. Ralph's Grocery Store*, 118 F.3d 1018, 1021 (4th Cir. 1997)).

In addition, ERISA imposes a fiduciary duty on plan administrators to discharge their duties "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with [ERISA]." 29 U.S.C. § 1104(a)(1)(D).

Thus, under ERISA, undisclosed "side agreements" that deviate from the terms and conditions of a plan or [CBA] are not binding upon the trustees of the plan. *Central States, S.E. & S.W. Areas v. Transport, Inc.*, 183 F.3d 623 (7th Cir. 1999) (finding that under ERISA the employer was bound by the terms of a [CBA], despite a second agreement between the employer and the union altering the terms of the [CBA]); *McGowan v. NJR Service Corp.*, 423 F.3d 341, 245-46 (3rd Cir. 2005) (explaining that the statute dictates that the rights of the parties are governed by the documents on file with the Plan, and not by outside private agreements between beneficiaries and participants).

No matter how well-meaning their motivation, [employer] Yerington and Local 7 could not bind the Defendant pension fund to treat Mr. Robbins as a "special case" and permit him to be covered by the [CBA] when he would not otherwise qualify under the terms of the plan. *See Egelhoff v. Egelhoff ex rel. Breimer*, 532 U.S. 141, 147 (2001) (noting the statutory command of § 1104(a)(1)(D) that an ERISA fiduciary must administer the plan "in accordance with the documents and instruments governing the plan").

*Robbins*, 2006 WL 1752388 at *5 (paragraph breaks added).

Whether the rule announced in *Behnke* benefits employee, employer, or union trust fund in

a given case, this court is obliged to follow the rule. As a matter of law under *Behnke*, the parties here could not orally modify the plan so as to entitle Glass to a monthly pension benefit lower than specified by the Plan, and they could not orally modify the plan so as to entitle her to benefits *higher* than that specified by the Plan. *See, e.g.,* citing *Behnke*: *Trustees for the UP Plumbers' & Pipefitters' Health & Welfare Fund v. Frazer*, 2006 WL 1008992, *5 (W.D. Mich. Apr. 13, 2006) (Greeley, M.J.) ("A union representative's oral modifications to the terms of a [CBA] may not be relied upon or enforced by an employer.").[5]

Waiver and Estoppel Do Not Apply to Payment of Benefits under a Written ERISA Plan

Finally, the court rejects any notion that the Plan waived its right to pay only the benefits specified by the Plan by failing to assert and exercise that right (i.e., by paying more than the correct amount) for over two years (February 1, 2005 through July 1, 2007), or that it should now be

---

[5]

*Accord Maxwell v. Lucky Const.*, 710 F.2d 1395, 1398 (9th Cir. 1983) ("Were we to initiate a system of case by case judicial review of oral modifications [of agreements covered by ERISA or LMRA], we would render the protective writing requirement less effective by exposing both union and employer to corrupt[-]bargain temptation.");

*Bd. of Trustees of Ohio Laborers Fringe Benefit Programs*, 2005 WL 1705173, *4 (S.D. Ohio July 20, 2005) (Kemp, M.J.) ("In support of their position that they are not required to make fringe-benefit contributions for non-union employees, Defendants claim that union representatives told Mr. Lombardi [employer's officer who signed agreement] that he was not required to have each of his employees who was hired to perform work within the trade jurisdiction of the union join the union within eight days of hire. Although the record reflects some dispute as to whether [he] was told this . . . it is not material because ERISA precludes oral modification of agreements.");

*Trustees of Plumbers & Steamfitters Local Union No. 43 Health & Welfare Fund v. Crawford*, 2007 WL 4481440, *9-10 (E.D. Ky. Dec. 18, 2007) (Curtis Collier, C.J.) ("Fund administrators may rely on the unambiguous terms of the writing. Oral agreements are not permitted.") (citing *Behnke* and *N.W. Ohio Admin'rs, Inc. v. Walcher & Fox, Inc.*, 270 F.3d 1018, 1024 (6th Cir. 2001)).

equitably estopped from invoking its right to pay only those benefits specifically promised by the plan document's terms.  ERISA section 515 and Sixth Circuit decisions interpreting it are fatal to Glass's equitable-estoppel claim.  That section provides,

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145.  As our Circuit has explained,

> Congress has enacted Section 515 in order to permit multiemployer plans to rely upon the terms of the collective bargaining agreements and plans as written, thus permit[ting] trustees of plans to recover delinquent contributions efficaciously, and without regard to issues which might arise under labor-management relations law. * * * *The fund thus stands much like a holder in due course in commercial law who is entitled to enforce the writing without regard to understandings or defenses applicable to the original parties.*

*Bakery & Confectionery Union & Indus. Int'l Health Benefits & Pension Funds v. New Bakery of Ohio*, 133 F.3d 955, 959 (6th Cir. 1998) (emphasis added).  *Cf., e.g., Pipefitters Local 636 Defined Pension Benefit Fund v. L&R Servs., Inc.*, 2007 WL 1814680, *6 (E.D. Mich. June 20, 2007) (in an action to recover delinquent fringe-benefit contributions that employers owed under a CBA, the employers "as a matter of law" could not raise fraud in the inducement or fraud in the execution of the document by which they agreed to be bound by the CBAs) (citing *Behnke*, 883 F.3d at 460).

In the earlier decision which held that parties may not orally modify an employer's ERISA/LMRA benefit obligations, our Circuit explained why an employer may not invoke any state-law contract or equitable defenses to avoid such obligations either:

> The contribution and payout amounts and systems are predicated on the trust's receipt of full payment on behalf of covered employees, *Robbins v. Lynch*, 836 F.2d 330 (7th Cir. 1988).  In *Lynch*, the Seventh Circuit explained why trust funds are entitled to enforce employers' written obligations to contribute notwithstanding an employer's proffered defense to that contractual obligation:

Funds must assume that all participants in a plan are following the stated terms; no other approach permits accurate actuarial computations and proper decisions about which claims to pay. Just as the Federal Deposit Insurance Corp. is not bound by undisclosed promises of insured banks, so pension funds get the benefit of the written terms of agreements.

Section 1145 of ERISA requires employers to make all pension contributions "not inconsistent with law". This language was added to ERISA "to simplify delinquency collection" by freeing pension and welfare funds from defenses that pertain to the unions' conduct. A claim that the union has promised not to collect a payment called for by the agreement is not a good answer to the trustees' suit – although it might be a ground on which to obtain damages from the local union.

*Id.* at 333-34 (citations omitted). Moreover, in the recent case of *Central States, Southeast & Southwest Areas Pension Fund v. Gerber Truck Service, Inc.*, 870 F.2d 1148 (7th Cir. 1989), the *en banc* court elaborated on why otherwise valid defenses to contract formation, such as fraud in the inducement, oral promises not to enforce written agreements, etc., cannot cut off the fund's claims:

Multi-employer pension and welfare plans would be in a bind if . . . flaws in the formation cut off third-party claims. Plans rely on documents to determine the income they can expect to receive, which governs their determination of levels of benefits. Multi-employer plans are defined-contribution in, defined-benefit out. Once they promise a level of benefits to employees, they must pay even if the contributions they expected to receive do not materialize – perhaps because they employers go broke, perhaps because they are deadbeats, perhaps because they have a defense to the formation of the contract. If some employers do not pay, others must make up the difference in higher contributions, or the workers will receive less than was promised. *Lynch*, 836 F.2d at 333.

Costs of tracking down reneging employers and litigating also come out of money available to pay benefits. The more complex the litigation, the more the plan must spend. Litigation involving conversations between employers and local union officials – conversations to which plans are not privy – may be especially costly, and hold out especially great prospects of coming away empty-handed . . . .

*Id.* at 1151.

*Behnke*, 883 F.2d at 460-61.

**Accordingly, the court holds that the plaintiff may not use waiver and estoppel, or any other state-law contract defenses, to compel the payment of benefits different than those to which she is strictly entitled under the literal terms of the Plan.** *See, e.g., Trustees for Michigan BAC Healthcare Fund v. CSS Contracting Co., Inc.*, 2008 WL 1820879, *8 (E.D. Mich. Apr. 22, 2008) (Sean Cox, J.) ("The parties acknowledge that Defendants' counterclaim of fraud in the inducement does not apply to reduce the amount of contributions owed to the Trust Fund Plaintiffs, and that they must be paid in accordance with the written agreements.") (citing *Behnke*, 883 F.2d 454); *MEEP Fund v. Encompass Electric & Data, Inc.*, – F. Supp.2d –, – (W.D. Mich. 2008) (Maloney, J.) ("defendants may not use the doctrines of waiver and estoppel, or any other state-law defenses to contract formation or enforcement that might otherwise apply, to avoid compliance with its audit, reporting, and benefit payment obligations under the CBAs that were incorporated into the letters of assent.") (citation omitted); *Trustees of BAC Local 32 Ins. Fund v. Caloia*, 261 F. Supp.2d 814, 820 (E.D. Mich. 2003) (granting summary judgment to plaintiff multiemployer plans in ERISA action to recover delinquent benefit contributions and to compel further audits to ascertain additional liabilities; "That there may have been an oral agreement which purported to limit the applicability of the CBA is of no consequence. Thus, [employer]'s promissory estoppel claim fails.")).[6]

**Contrary to Glass, the Supreme Court's decision in *Varity Corp. v. Howe*, 516 U.S. 49 (1996), does not affect this outcome.** As for the Plan, it could and should have mustered more-

---

[6]

*Cf. Dematic Corp. v. UAW*, – F. Supp.2d –, –, 2009 WL 2143648, *14 (W.D. Mich. July 16, 2009) (Maloney, C.J.) ("it is irrelevant how long Dematic chose to pay more than the CBA required. Neither the arbitrator nor the UAW presents precedent for such an extraordinary estoppel- or waiver-style theory. On the contrary . . . .") (citing *MEEP Fund*).

recent and more on-point Sixth Circuit precedent, which expressly supports its position in situations just like this one, rather than relying on *Varity*, which does not supply a complete answer for this situation.   As for Glass, her reliance on *Varity* is entirely misplaced, as *Varity* is readily distinguished, both factually and legally, from the instant case.

The Plan characterizes *Varity Corporation* as holding that

> these types of claims [equitable estoppel] are viable only in situations where the individual claimants did not have a claim for benefits pursuant to the Plan document. When a party has a claim [at law] pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), the Supreme Court questioned the use of any other theories [i.e., equitable theories] for recovery.

> *Varity Corp.* involved a devious plan by Massey-Ferguson to transfer a significant number of employees and retirees to a corporation that it had created called Massey Combines Corporation.   *Id.* at 493.   While Massey-Ferguson made grand representations about the tremendous upside potential of Massey Combines Corporation, it failed to disclose to the employees and retirees who were being transferred to this entity that Massey Combines Corporation was being set up to fail. In fact, Massey Combine was "insolvent from the dat of its creation," and it had a $46 million negative net worth on the day that it was created.   *See*, *Varity Corp.*, 516 U.S. at 494 . . . .

> After Massey Combines Corporation failed, the former Massey-Ferguson employees and retirees filed suit in federal court seeking redress of their claims pursuant to ERISA.   What these employees were seeking was reinstatement into the Massey-Ferguson benefit plans, not the Massey Combines Corporation benefit plans [which were deliberately and deceitfully unfunded].   Their only bas[e]s for bringing the claims were estoppel theories based upon alleged misrepresentation by Massey Ferguson employees that were designed to encourage these individuals to voluntar[il]y transfer to the Massey Combines Corporation venture.   Thus, the . . . Court was faced with the requirement of deciding whether this estoppel theory was a viable claim under ERISA.   *Id.*, at 495-96.

> The . . . Court found [sic, held] that an estoppel claim existed only under the very narrow circumstances established in *Varity Corp.*   Those circumstances were egregious, written misrepresentations that were known to be false at the time that they were made.   The Supreme Court, in *Varity Corp.*, noted [sic, held] that this type of claim would only be allowed if the injured party did not have a claim, at all, as a participant pursuant to the Plan language.

In *Varity Corp.*, the employees that [sic, who] had been transferred from Massey Ferguson to Massey Combines (the corporation set up to fail), were no longer "participants" in the Massey Ferguson plans. Thus, they did not qualify as a party that [sic, who] could bring a lawsuit "pursuant to the terms of the plan," since they were not "participants," which is required by ERISA Section 502(a)(1)(B) [29 U.S.C. § 1132(a)(1)(b)]. *See Varity Corp.*, 516 U.S. at 515 . . . . Thus, the only claims that these individuals could bring were estoppel claims under ERISA § 502(a)(3). *Id.*

The Supreme Court recognized, however, that unfettered use of equitable theories as a bassi for claims under ERISA created potential problems for ERISA enforcement in the future. *Id.* The Supreme Court, therefore, questioned any use of these theories, when a party had the potential of bringing [sic, *right to bring*] a claim pursuant to the plan language under ERISA Section 502(a)(1)(b).

> Third, the statute authorizes "appropriate" equitable relief. We should expect that courts, in fashioning "appropriate" equitable relief, will keep in mind the "special nature and purpose of employee benefit plans," and will respect the "policy choices reflected in the inclusion of certain remedies and the exclusion of others." *Pilot Life Ins. Co.*, 481 U.S., at 54 . . . . *See also Russell*, 473 U.S., at 147 . . . ; *Mertens*, 508 U.S., at 147 . . . . Thus, we should expect that where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be "appropriate." *Cf. Russell, supra*, at 144 . . . .

> But that is not the case here. The plaintiffs in this case could not proceed under the first subsection because they were no longer members of the Massey-Ferguson plan and, therefore, had no "benefits due [them] under the terms of [the] plan." § 502(a)(1)(B). They could not proceed under the second subsection because that provision, tied to § 409, does not provide a remedy for individual beneficiaries. *Russell, supra*, at 144 . . . .

> They must rely on the third subsection or they have no remedy at all. We are not aware of any ERISA-related purpose that denial of a remedy would serve. Rather, we believe that granting a remedy is consistent with the literal language of the statute, the Act's purposes, and pre-existing trust law.

Plaintiff has brought this claim as a participant in the Plan. The United States Supreme Court has made it very clear that, in a situation where a participant can bring a claim pursuant to the ERISA Plan language, the Court should not resort to additional equitable remedies in that circumstance. Under ERISA, this is a request

for an extraordinary remedy, and cannot be utilized by the Court under these circumstances. *Varity Corp., supra.* Thus, Count II . . . fails to state a claim . . . .

MTD at 7-9 (paragraph break added in *Varity* block quote).

In its entirety, Glass's response regarding *Varity* reads as follows:

Defendant argues that . . . *Varity* . . . supports its argument that Plaintiff should not be permitted to pursue equitable relief. Rather than supporting Defendant's contention, *Varity* affirmed the right of plan participants to enforce fiduciary duties owed to them individually.

Plaintiffs in *Varity* were employees and retirees of Massey-Ferguson who alleged they had been fraudulently induced to leave their benefit plan to transfer to a new plan being set up under a new entity known as Massey Combines. Massey Combines, described as "insolvent from the day of its creation"[,] quickly ended up in receivership, costing the employees and retirees their benefits. *Varity*, 516 U.S. 491, at 494. The former Massey-Ferguson employees and retirees brought ERISA claims, a[ssert]ing estoppel theories and seeking reinstatement into the Massey-Ferguson benefit plans. The Supreme Court rejected defendant's arguments that Congress had not intended to never allow [sic] individuals to pursue claims of breach [of] fiduciary duties relating to their own claims. *Varity*, [516 U.S.] at 507.

The language cited in Defendant's Brief . . . is actually *dicta* taken from the *Varity* court's explanation as to why equitable claims <u>do not</u> create potential problems for ERISA enforcement in the future (as argued by Varity Corp. and the Kellogg Plan). At best, *Varity* stands for the proposition that where legal remedies are sufficient for Plaintiffs, there "likely" will be no need for further equitable relief. *Varity*, [516 U.S.] at 515.

P's Opp at 7-8.

Oddly, neither Glass nor the Plan cites a *single* decision applying or interpreting *Varity*. The court has not located any Sixth Circuit Court of Appeals decision which even suggests that *Varity* allows a plan participant to use an equitable theory (such as estoppel) to obtain benefits beyond those promised by the written terms of an ERISA *pension* plan.

In any event, *Varity* tends to support the Plan's position in one respect, and does nothing to support Glass's position. First, *Varity* is readily distinguishable from our case. The *Varity* plaintiffs

were no longer participants in the plan from which they sought payment, so they could not bring a legal claim for payment of benefits under ERISA § 502(a)(1)(B), which is 29 U.S.C. § 1132(a)(1)(B). The Supreme Court allowed the *Varity* plaintiffs to seek equitable relief under ERISA § 502(a)(3) only because they would otherwise have no remedy at all, which would be unjust, inconsistent with general principles of trust law, and contrary to the spirit and purposes of ERISA. Here, by contrast, the parties agree that Glass is a plan participant entitled to payment of some pension benefits under the terms of the plan as written. As such, Glass has the right to bring a straight legal claim for payment of benefits under ERISA § 502(a)(1)(B), as she has done in count one. Consequently, Glass's situation triggers the Supreme Court's holding that in ERISA cases, "where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'" *Varity Corp.*, 516 U.S. at 507.

Nonetheless, *Varity* alone arguably does not *entirely* preclude Glass's equitable claim as a matter of law (without regard to the facts of the case). After all, the *Varity* court stated only that there will "likely" be no need for equitable relief when an adequate legal remedy is available to the ERISA claimant, not that there will "never" be a need for equitable relief in such a situation. Likewise, the *Varity* court stated only that equitable relief will "normally" not be appropriate in this situation, not that it will "never" be appropriate. In other words, *Varity* left open the theoretical possibility that in a rare case, a plan participant who has a legal remedy might be permitted to assert an equitable claim as well.

Accordingly, it is necessary to consult other Sixth Circuit case law, as the parties should have done. When one consults non-*Varity* case law in our circuit, one discovers the definite answer

discussed at length above. *Behnke* (6th Cir. 1989) and its progeny, both before and after *Varity* (U.S. 1996), hold that claims and defenses that are available in equity are categorically unavailable when the dispute involves payment of pension benefits under a written ERISA plan. Glass has not identified any Sixth Circuit decisions which qualify this rule or make an exception which might apply here, and the court finds none.

In summary, Glass contends that her equitable claim seeks nothing more than payment of the amount of pension benefits to which she was entitled under the plan's terms, and if that is true, count two must be dismissed as duplicative of count one. To put it another way, Glass's characterization of count two renders it nothing more than a claim for monetary relief dressed up as a claim for equitable relief. *Cf. Ramsey v. Formica Corp.*, 398 F.3d 421, 425 (6th Cir. 2005) (Martin, Batchelder, E.D. Mich. D.J. John O'Meara):

> A 2003 audit of Formica's pension plan found that 440 of the 624 retirees in its defined pension plan dating from 1985 were receiving incorrect benefits. In January of 2004, Formica . . . found that 295 retirees received overpayments totaling about $1 million and another 145 retirees had been underpaid a total of about $500,000. Formica . . . began correcting the benefit payment mistakes.

> While Formica made up the underpaid amounts, it also reduced the payments of those who were overpaid, and it has indicated that it may have to recover the overpayments. * * * Plaintiffs' monthly payments were reduced, depending on the individual, by as little as a few cents or as much as $150.

> Plaintiffs bought into Formica's retirement plan as a result of Formica's early[-] retirement solicitations. * * * For between eight and seventeen years. . . plaintiffs received monthly benefit checks in the amounts that were represented to them by Formica's early[-]retirement solicitation.

> *To maintain their monthly payments notwithstanding the audit findings, plaintiffs filed an action* in state court *a[ssert]ing claims of* negligent misrepresentation and *promissory estoppel.* * * *

> * * * The district court found that plaintiffs' state-law claims were entirely preempted by the . . . Act, and the type of relief that plaintiffs sought was not

available under the Act.

* * *

Plaintiffs seek injunctive relief under 29 U.S.C. § 1132(a)(3), which provides: * * *

The Supreme Court has construed the phrase "appropriate equitable relief" narrowly, noting that such equitable relief is limited to redressing violations or enforcing provisions of the Act or a plan governed by the Act. *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 253-54 . . . (1993). * * * *The Act does not provide a cause of action for legal actions for monetary damages disguised as suits in equity. Great-West Life*, 534 U.S. at 215-16 . . . .

*Ramsey*, 398 F.3d at 422-23 and 425 (emphasis added). Conversely, if Glass's equitable claim seeks payment of the benefit amount mentioned in the plan's communications with her and paid until July 1, 2007 ($851 per month) – and seeks that amount without regard to whether it is higher than the amount she is entitled to under the plan's terms ($796 per month) – then she is invoking the state common law of Equity to vary the written terms of the plan – which is flatly prohibited by our precedents in *Behnke et al.*

**Finally, out of an abundance of caution, the court has considered whether *Armistead v. Vernitron Corp.*, 944 F.2d 1287 (6th Cir. 1991), supports Glass's position that this court could equitably estop the Plan from relying on her pension plan's written terms.[7] It does not.** In *Armistead*, the court held that in cases where the employer pays for benefits out of its own assets, "the purpose of Congress in enacting 29 U.S.C. § 1102(a) [requiring that employee benefit plans be in writing] would not be frustrated by recourse to estoppel principles, which are generally applicable in all legal actions." *Armistead*, 944 F.2d at 1300. But the *Armistead* court drew a stark distinction between the principles applicable to pension plans and those applicable to welfare plans, stating,

---

[7]Glass's opposition brief does not mention *Armistead*, and the Plan's opening brief mentions *Armistead* in passing but does not discuss it.

The substance of the . . . opinion [*Nachwalter v. Christie*, 805 F.2d 956 (11th Cir. 1986)] is that Congress's purpose in requiring that benefit plans be in writing can only be served if the plan is enforced as written. When a party is estopped from asserting a right in a written plan, the plan as enforced is not the same as the plan as written. For this reason, ERISA would seem to preclude application of equitable estoppel to disputes over benefits plans under the statute.

*Armistead*, 944 F.2d at 1300. As Eastern Michigan's Judge Duggan correctly noted, "the [*Armistead*] court implicitly appears to have limited its allowance of an equitable estoppel claim to those cases involving *welfare* plans, by stating:

This reasoning applies primarily to cases involving pension plans and is much less cogent when welfare benefit plans are at issue. The reason is that pension benefits are typically paid out of funds to which both employers and employee [sic] contribute. Contributions and pay-outs are determined by actuarial assumptions reflected in the terms of the plan. If the effective terms of the plan may be altered by transactions between officers of the plan and individual plan participants or discrete groups of them, the rights and legitimate expectations of third parties to retirement income may be prejudiced.

*Easa v. Florists TransWorld Delivery Ass'n*, 5 F. Supp.2d 522, 526 (E.D. Mich. 1998) (quoting *Armistead*, 944 F.2d at 1300). Using this reading of *Armistead* and marshaling other precedent as well, Judge Duggan concluded with reasoning which applies fully to our case:

It is undisputed that the employee benefit plan at issue in the instant case is a pension plan from which contributions were obtained from both the employer and the employee. Plaintiff's entitlement to benefits, although mistakenly communicated to him, was pre-determined by "actuarial assumptions" inherent in the plan's provisions for benefits upon retirement. If plaintiff were allowed to prevail on his theory, the effective terms of the written plan would be modified by the miscommunication of the employer [technically, by the equitable estoppel which would arise from the plaintiff's alleged reliance on the employer's erroneous communication]. Clearly, this result is not contemplated by the Sixth Circuit's decision in *Armistead.*

*Easa*, 5 F. Supp.2d at 526 (citing *Richards v. GMC*, 876 F. Supp. 1492, 1508 (E.D. Mich. 1995) (noting *Armistead*'s distinction between ERISA pension plans and ERISA welfare plans) and *Sprague v. GM*, 133 F.3d 388 (6th Cir. 1998) ("Principles of estoppel, however, cannot be applied

to vary the terms of unambiguous plan documents; estoppel can only be invoked in the context of *ambiguous* plan provisions.")).[8]

## ORDER

The Plan's motion to dismiss count two (Equitable Estoppel) **[doc. # 35] is GRANTED**.

**Count two is dismissed** for failure to state a claim on which relief can be granted.

This is <u>not</u> a final, immediately appealable order. *See Ellis v. Kaye-Kibbey*, 581 F. Supp.2d 861, 884 (W.D. Mich. 2008) (Maloney, C.J.) (citing *Johnson v. UPS*, 117 F. App'x 444,

---

[8]

Even if Glass were not precluded as a matter of law from seeking equitable estoppel, the record thus far does not suggest that she could not satisfy the elements of such a claim. Under federal common law, the elements of an equitable-estoppel claim are (1) there was conduct or language constituting a representation of a material fact; (2) the party to be estopped was aware of the true facts; (3) the party to be estopped intended that the other party act on the representation, or it reasonably believed that the other party would act on it; (4) the other party was unaware of the true facts at the time of the representation; and (5) the party seeking estoppel reasonably and justifiably relied on the representation. *See Egerer v. Woodland Realty, Inc.*, 556 F.3d 415, 424-25 (6th Cir. 2009) (quoting *Sprague v. GMC*, 133 F.3d 388, 403 (6th Cir. 1988)), *reh'g & reh'g en banc denied* (6th Cir. May 4, 2009). At Michigan common law,

> Equitable estoppel arises only "when one by his acts, representations, or admissions, or by his silence when he ought to speak out, intentionally or through culpable negligence induces another to believe certain facts to exist and such other rightfully relies and acts on such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts."

*Mate v. Wolverine Mut. Ins. Co.*, 592 N.W.2d 379, 382-83 (Mich. App. 1998) (Richard Allen Griffin, P.J.) (quoting *Lichon v. Am. Universal Ins. Co.*, 459 N.W.2d 288, 295 (Mich. 1990)), *app. denied*, 622 N.W.2d 522 (Mich. 2000).

Glass probably could not satisfy the second element, which requires a showing that "the party to be estopped was aware of the true facts," *see Egerer*, 556 F.3d at 425, because she does not allege that the Plan knew that it was overstating the amount of monthly pension benefit she would be entitled to receive. More generally, it is difficult to fathom what would motivate an employer or pension plan to intentionally tell a participant that she will be entitled to more than the plan actually provides *and then actually pay her the inappropriately higher amount*. The court cannot readily discern what benefit the employer/plan would derive, or expect to derive, from such an intentional misrepresentation which costs it money it is not contractually obligated to pay.

447 (6th Cir. 2004) ("[T]he appeal . . . was dismissed by this court for lack of appellate jurisdiction, on grounds that no ruling had yet been entered terminating all issues in the case as to all litigants and that no appealable order . . . had been issued under [Rule] 54(b).")) (footnote 19 omitted).

IT IS SO ORDERED this 18th day of August 2009.

/s/ Paul L. Maloney
Honorable Paul L. Maloney
Chief United States District Judge